No. 27,939.

FRANK H. HARPER, *Appellant,* v. C. B. Cox, *Appellee.*

(264 Pac. 1075.)

SYLLABUS BY THE COURT.

1. ATTACHMENT—*Wrongful Attachment—Evidence.* The rulings of the court on objections to the introduction of various items of evidence considered and held not to constitute reversible error.

2. SAME—*Wrongful Attachment—Instructions.* The instructions fully considered in the light of the analysis thereof and comment thereon by the appellant, and the assignment of error therein held to be without merit.

3. SAME—*Wrongful Attachment—Necessity of Pleading Special Damages for Loss of Credit.* The decision in the case of *Bradley v. Borin,* 53 Kan. 628, 36 Pac. 977, followed and approved, to the effect that in an action for damages on account of the wrongful levy of an attachment special damages for loss of credit not alleged in the petition cannot be recovered.

4. SAME—*Wrongful Attachment—Special Findings.* Rulings of the trial court on motion to strike out certain special findings of the jury and on the motion for a new trial considered and held not erroneous.

Appeal from Douglas district court; HUGH MEANS, judge. Opinion filed March 10, 1928. Affirmed.

*Thomas Harley,* of Wichita, *George K. Melvin* and *R. E. Melvin,* both of Lawrence, for the appellant.

*C. A. Smart,* of Lawrence, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: In this action in the district court of Douglas county the plaintiff, Harper, seeks to recover damages against the defendant, Cox, for the wrongful and malicious issuance of an attachment procured by Cox in a certain other civil action begun in the district court of the same county by Cox against Harper in the year 1921. Trial was had before a jury in November, 1926, and a general verdict was rendered for the plaintiff against the defendant for $6,239.88. Special questions were answered by the jury, showing the verdict to have been composed of the following items: Value of time, $1,300; attorney fees, $500; railroad fare, $170; incidentals, $8; damage to business, $4,261.88. The defendant moved the court to strike out the item included in the general verdict for damages to

Appeal and Error, 4 C. J. p. 1003 n. 61. Attachment, 6 C. J. p. 519 n. 1; 29 L. R. A. n. s. 276; 46 L. R. A. n. s. 471; 37 A. L. R. 660; 2 R. C. L. 908, 910. Trial, 38 Cyc. p. 1778 n. 73.

business in the sum of $4,261.88. Plaintiff filed a motion for a new trial, and also one to correct or set aside certain special findings of the jury. The court sustained the motion of the defendant by striking out the item for damages to business, and overruled the motions of the plaintiff for a new trial and to correct or set aside certain special findings, and rendered judgment for plaintiff against defendant for $1,978 and costs. Plaintiff appeals, assigning as errors, first, the admission and rejection of certain evidence; second, the giving of certain instructions; third, striking out of the verdict the item for damage to business; fourth, rendering judgment for only $1,978; fifth, overruling motion to correct and set aside certain special findings; and, sixth, overruling motion for a new trial.

Under the first assignment of error is the sustaining of objections to questions as to the loss of credit. This consists of questions asked bankers, newspaper men, and the plaintiff himself. There is a theory of the case in which such questions would have been proper for the purpose of proving malice, which was an issue in this case. In the case of *Western News Company v. Wilmarth*, 33 Kan. 510, 6 Pac. 786, where the question of loss of credit was before the court for a slightly different purpose than in this case, the court said:

"As exemplary damages are recoverable for the wrongful and malicious suing out of an attachment, a wide latitude is permitted in the introduction of the evidence in this class of cases. Such evidence may tend to show the malice, oppression or improper motives of the party obtaining the writ, and the evidence may go to the court or to the jury for consideration." (p. 514.)

If we were convinced that the purpose in this case was to prove malice we might be disposed to hold that the exclusion of such evidence was error, but everything in the record indicates that such was not the purpose, but that on the contrary the purpose was to establish in dollars and cents the amount of such loss. The questions themselves, the objections, the rulings, the affidavits used on the hearing of the motion for a new trial, and substantially all the arguments on the subject in the brief of appellant point to the purpose of establishing specific damages for loss of credit. The references to the two Meinhart cases in 119 Kansas and 124 Kansas could have no other possible purpose. Any suggestion to the court and opposing counsel of a limited purpose of showing malice only would certainly have procured a different ruling. Since the very evident purpose was to prove loss of credit, as is shown by the consistent attitude of the plaintiff throughout the entire trial and in

this appeal, and since the court's attention was not directed to any different purpose, we are unwilling to call it prejudicial error. As to the evidence of the extent of newspaper circulation, it would be immaterial for either purpose, and the plaintiff at other places in his testimony testified indirectly to the same effect as the evidence excluded, so this comment is mainly concerning the testimony of the bankers.

Appellant complains of the exclusion by the court of the journal entry of judgment, showing that the attachment was dissolved. In the same connection, however, the court permitted the introduction of the mandate from the supreme court and told the jury in instruction No. 12 that the dissolution of the attachment was not controverted. There is nothing further along this line that plaintiff needs.

As to the refusal to permit plaintiff to show that the $15,000 mortgage had been paid off before the attachment was issued, the court offered to let this testimony in if counsel for plaintiff would follow it up by showing such information reached Cox before the attachment was issued. This was all anyone should ask, and it was certainly not proper without that connection. We cannot find any merit in the other items of admission or exclusion of testimony of which complaint is made.

Appellant directs the attention of the court and argues at great length concerning errors which he claims were made by the trial court in the instructions given. There are no complaints because of instructions omitted. Seventeen different features of error with reference to the instructions are pointed out, which might be designated as follows: (1) Sheriff's custody of property and leaving it with the attachment debtor; (2) property not to be restored to custody; (3) physical custody not necessary; (4) leaving property in custody of defendant under instructions of plaintiff; (5) stating theory of defendant about mules under attachment, which theory omits or eliminates malice; (6) longer space given to plaintiff's theory than defendant's theory; (7) discussing probable cause; (8) attorney fees on reasonable basis or actual amount paid; (9) magnifying and minimizing theories of respective parties; (10) what the court gathers from the evidence, summarizing it, and then informing the jury that they are the judges of the evidence; (11) recording settlement of mortgage; (12) hour of filing attachment affidavit; (13) leaving to jury question of wrongful attachment

when it is a matter of law; (14) discussion of punitive or exemplary damages; (15) mention of nominal damages; (16) referring to question of levy; (17) limiting facts to those on day of attachment. No good purpose could be served by taking up separately and extending this opinion with a discussion of each of these criticisms of the instructions given. It is sufficient to say that the instructions and the comment of appellant thereon have been read and reread, and the instructions have been read separately as criticized and collectively, and while, as in most instructions taken separately, there may be apparent defects or omissions, yet when read together the errors pointed out usually disappear. That is the case here. We find no error in these instructions justifying a reversal of the case.

Appellant complains of the action of the court in striking out the item of damages for loss of credit in the sum of $4,261.88 and rendering judgment in his favor for the balance only, and cites, among others, the case of *Schwartzberg v. Bank*, 84 Kan. 581, 115 Pac. 110. The reference in this case to damages for loss of business is based upon the decision in *Western News Company v. Wilmarth*, supra, where the loss under consideration was the depreciation of the value of the goods taken by attachment during the time they were held by the sheriff, and in the opinion, as above quoted, reference is made to the statement that his business was broken up as being proper evidence for vindictive or exemplary damages. Aside from the one purpose of showing malice, such evidence can have no place in a case of this kind. No special damages were pleaded and no allowance of this kind could be awarded the plaintiff without a special plea on which to base it.

"In an action for damages on account of the wrongful levy of an attachment upon goods, wares, and merchandise, special damages for loss of profits not alleged in the petition cannot be recovered." (*Bradley v. Borin*, 53 Kan. 628, syl., 36 Pac. 977.)

"In an action to recover damages for the wrongful attachment of money and notes by way of garnishment, where there is no malice nor grounds for the recovery of exemplary damages, the measure of damages is interest on the money and notes during the time they were held under the garnishment process and the necessary expenses incurred in regaining possession of the property. Neither the loss of prospective profits in the general business of the owner because a part of his property was garnished nor injury to his credit are elements of damage." (*Dody v. Bank*, 82 Kan. 406, syl., 108 Pac. 804.)

The first of the above-cited cases had in it the element of malice, as does the case at bar, but the latter did not.

Harper v. Cox.

No good reason is assigned why the court should have stricken out findings 15 and 18, which were findings to the effect that the element of malice was not established. The trial court evidently agreed with the jury that proof of malice was lacking.

As to the overruling of the motion for a new trial, after carefully considering the affidavits and exhibits submitted with the motion and the argument in its favor, we think the motion was properly overruled.

The judgment is affirmed.

The court regrets that it is compelled to register its disapproval of the very unusual and highly improper language used in the briefs of the appellant in this case. Can it be that because a case has been tried and retried so often, as this one has, counsel for the time being forget they are attorneys and advocates at the bar? The ethics of the profession will not tolerate nor excuse the use of derogatory remarks about a trial judge in the discharge of his official duties, because the effect of such is more of a reflection upon the exalted position than upon the individual who occupies it.

"No remarks of counsel derogatory to the dignity of the trial judge will be tolerated by this court. An attorney indulging in this line of argument is liable to have the objectionable brief stricken from the files, or to be disbarred from practicing in this court." (*State v. Gallup,* 1 Kan. App. 618, syl. ¶ 1. See, also, *State .v. Linderholm,* 95 Kan. 669, 149 Pac. 427.)

It is by the court further ordered that the briefs of the appellant be stricken from the files.